**SIGNED THIS: September 25, 2006**

                                                                               _____
                                                                               **MARY P. GORMAN**
                                                                  **UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
| --- | --- | --- |
| | ) | In Bankruptcy |
| JASON L. HARDEN, | ) | |
| | ) | Case No. 05-77092 |
|        Debtor. | ) | |
| _____ | ) | |
| | ) | |
| SHANNON L. HARDEN, | ) | |
| | ) | |
|        Plaintiff, | ) | |
| | ) | |
|    v. | ) | Adversary No. 06-7003 |
| | ) | |
| JASON L. HARDEN, | ) | |
| | ) | |
|        Defendant. | ) | |

## O P I N I O N

This case came before the Court for trial on an adversary complaint filed by Shannon Harden Spaid against the Debtor, Jason

-1-

L. Harden, her former husband.  The adversary Complaint seeks to have certain obligations owed by Mr. Harden to Mrs. Spaid declared nondischargeable.

Mrs. Spaid and Mr. Harden were married in 1997.  During the course of the marriage, one son was born to them in 2002.  They were divorced pursuant to a Judgment of Dissolution of Marriage entered by the Circuit Court of the 11th Judicial Circuit, McLean County, Illinois on December 15, 2003.  The Judgment incorporated by reference a Property Settlement Agreement signed by both parties.  As is typical of such documents, the Property Settlement Agreement here made provision for the support of the parties' son and allocated the parties' assets and liabilities.

Mr. Harden filed his voluntary petition under Chapter 7 of the Bankruptcy Code on October 14, 2005.  Mrs. Spaid filed her adversary Complaint on January 4, 2006.  In her Complaint, Mrs. Spaid alleged that Mr. Harden has failed to comply with the terms of the Property Settlement Agreement and the Judgment for Dissolution of Marriage.  Specifically, she alleged the Mr. Harden has failed to (i) pay for daycare expenses for their son; (ii) pay for one-half of the losses incurred in the sale of the marital home; (iii) pay the debts he was ordered to assume, including those to U.S. Bank, Verizon, Cingular, Bergner's, Culligan, and Financial Recovery Services; (iv) pay the remaining utilities after the sale of the marital home, and (v) pay bills which Mr. Harden incurred

after the parties' separation and for which he "may have forged Plaintiff's signature."

Mrs. Spaid requested that the Court find that the obligations of Mr. Harden to her were nondischargeable pursuant to 11 U.S.C. §§ 523(a)(5) and (a)(15).  Mrs. Spaid also requested that money judgments be entered in her favor with respect to the amounts claimed.

Article I, paragraph 10 of the Property Settlement Agreement required Mrs. Spaid and Mr. Harden to split the costs of their son's daycare equally. Mrs. Spaid alleged that Mr. Harden was $994.86 in arrears on that obligation at the time that she filed her Complaint and also alleged that, because the expense was ongoing, the arrearage continued to grow.  At trial, Mr. Harden did not dispute this obligation.  Because the parties ultimately stipulated as to the nondischargeability of this obligation, proofs were not presented as to the amounts remaining due at the time of trial.

Article II, paragraph 1 of the Property Settlement Agreement provided for the sale of the parties' residence at 407 South Main Street, Arrowsmith, Illinois and required each party to pay one-half of any loss incurred through such sale.  Mrs. Spaid presented the closing statement from the sale showing that $4,326.80 had to be paid by her at closing to complete the transaction.  Mrs. Spaid also presented a copy of a cashier's check as evidence that she

had, in fact, paid that sum to the title company to close the transaction.  Mr. Harden presented no evidence to dispute the sums paid at closing or to refute his obligation to reimburse Mrs. Spaid $2,163.40 for his one-half of these expenses.

Mrs. Spaid also presented separate invoices for work done on the marital home by Shoemaker Farm Drainage in the amount of $160, Zeschke Septic in the amount of $225, Illinois Electrical Construction, Inc. in the amount of $165, and Air King Heating and Air-Conditioning in the amount of $75.25.  Mrs. Spaid testified that all of these expenses had been incurred for inspections or repairs needed to complete the sale of the property.  Mr. Harden presented no evidence regarding these bills to contradict that presented by Mrs. Spaid.  Mrs. Spaid presented an exhibit showing that these bills were part of the house sale loss and should be divided equally.  Her pleadings, however, seek to have Mr. Harden held totally responsible for these bills.  The bills were related to the house sale and should be split between the parties, making Mr. Harden responsible to reimburse Mrs. Spaid the sum of $312.63 for his share.

Article II, paragraph 9 of the Property Settlement Agreement required Mr. Harden to assume the marital debts to U.S. Bank, Verizon, Cingular, Bergner's, Culligan, Financial Recovery Services, and his student loans.  Mrs. Spaid presented a credit report showing all of the debts, except for Mr. Harden's student

loans, were being reflected on her credit as delinquent or unpaid. Mr. Harden admitted that he had not paid all of these debts. The combined amounts of these debts as of filing of the Complaint were alleged to be $8,031. Mrs. Spaid presented no evidence that she had actually been required by any of these creditors to make payment on the debts.

Article II, paragraph 9 of the Property Settlement Agreement also required Mr. Harden to pay any remaining utility bills after the sale of the marital home. Mrs. Spaid testified that she had paid utility bills to Ameren in the amount of $264 and Ni-Cor in the amount of $306 after the house closing, which should have been paid by Mr. Harden pursuant to this provision. Mr. Harden presented no evidence to contradict this testimony.

Article II, paragraph 8 of the Property Settlement Agreement required each party to assume and pay all debts incurred by such party after their separation. Mrs. Spaid alleged in her Complaint that Mr. Harden incurred debt after their separation to the Bloomington Municipal Credit Union in the amount of $1,203.24 and to Sprint PCS through Calvery Portfolio in the amount of $65 and "may have forged Plaintiff's signature thereto to obtain financing." Mrs. Spaid presented no evidence at trial of the existence of these obligations and presented no evidence that Mr. Harden forged her signature on these or any other obligations.

As set forth above, during the trial, the parties stipulated

that any amounts Mr. Harden owed Mrs. Spaid for the daycare expenses of their son were in the nature of support and nondischargeable pursuant to § 523(a)(5). The Court agrees and an Order will be entered accordingly.

The more difficult issue is whether any of the other obligations of Mr. Harden are in the nature of support and subject to the provisions of § 523(a)(5). Section 523(a)(5) provides in relevant part as follows:

> (a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt –
>
> (5) to a spouse, former spouse or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement. . . .

11 U.S.C. § 523(a)(5).

In determining whether obligations set forth in a Property Settlement Agreement are in the nature of support, a court must consider factors such as (i) whether the agreement includes provisions for payments to the ex-spouse; (ii) whether a hold-harmless provision was intended to balance the parties' incomes; (iii) whether a hold-harmless provision is located in the midst of property allocation provisions, and (iv) whether a hold-harmless provision describes the character and method of payment. In re Coil, 680 F.2d 1170, 1172 (7th Cir. 1982); In re Woods, 561 F.2d 27,

30 (7th Cir. 1977).  Courts also consider other factors, including the label on the obligation in the agreement, the age and health of the parties, the length of the marriage, the relevant tax consequences, whether each party had counsel, and whether any waiver of rights was knowing and voluntary.  In re Daulton, 139 B.R. 708, 710 (Bankr. C.D. Ill. 1992); In re Douglas, 202 B.R. 961, 964 (Bankr. S.D. Ill. 1996).

Mrs. Spaid presented little evidence in support of her position that the unmet obligations of Mr. Harden from the Property Settlement Agreement, other than the daycare obligation, were in the nature of support.  Mr. Harden testified at trial that he was 31 years old, which means he would have been about 28 years old at the time of the divorce.  Mrs. Spaid appeared to be of a similar age.  No evidence was presented of any health problems or other disabilities which would prevent either party from future gainful employment. Although Mr. Harden made more money than Mrs. Spaid at the time of the divorce, Mrs. Spaid was and continues to be employed.  The provisions of the Agreement at issue here are contained under the heading "Article II Property Division." Support provisions for the parties' son and Mrs. Spaid are separate and distinct from the provisions at issue here.

The Court is aware that the Agreement contains a specific provision which purports to be a stipulation by the parties that, if either party filed a bankruptcy case, the obligations of the

parties to each other were deemed to be support obligations and nondischargeable. The stipulation further states that the parties have been fully advised of the provisions of the Bankruptcy Code regarding transfers of property and understand that a bankruptcy court could avoid transfers made pursuant to the Agreement. The provision appears to be boilerplate and attempts to avoid the consequences not only of a future bankruptcy, but also of possible future fraudulent conveyance litigation. The stipulation acknowledges that the parties cannot bind the Bankruptcy Court in its review of dischargability issues.

Mr. Harden was not represented by counsel in the divorce process. Although that is not a basis to relieve him of the obligations he undertook in the Property Settlement Agreement, it is a basis to be skeptical as to whether he fully understood the ramifications of the stipulation and knowingly waived his rights. Further, this Court is obligated to review whether the obligations which are at issue here are truly in the nature of support. A stipulation by the parties which says that they are support obligations, but references no factual basis for the stipulation, is not helpful to the Court and cannot form the basis for the Court's decision.

Considering all of the testimony and evidence presented at trial, Mrs. Spaid has failed to prove that the obligations of Mr. Harden, other than the daycare obligation, are in the nature of

support. Accordingly, these obligations are not excepted from discharge pursuant to § 523(a)(5).

Thus, the inquiry now turns to § 523(a)(15), which provides in pertinent part as follows:

> (a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt –
>
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. . . unless –
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. . .; or
>
> (B) discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse, former spouse, or child of the debtor(.)

11 U.S.C. § 523(a)(15).[1]

In order to meet her burden of proof under § 523(a)(15), Mrs. Spaid must prove the existence of each obligation claimed and must establish that each obligation was incurred by Mr. Harden in the

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") generally took effect on October 17, 2005. BAPCPA included a provision which deleted the affirmative defenses set forth in § 523(a)(15)(A) and (B). Because Mr. Harden filed his case on October 14, 2005, however, the affirmative defenses remain available to him.

course of their divorce. In re Crosswhite, 148 F.3d 879, 884 (7th Cir. 1998). As set forth above, Mrs. Spaid has met that burden with respect to the loss from the house sale, the additional expenses from the house sale, the hold-harmless on various bills, and the utility bills remaining after the house sale. Mrs. Spaid did not meet her burden with respect to the bills allegedly incurred after the parties' separation. Additionally, this Court must determine that the obligations are not of the type described in § 523(a)(5). Id. *at* 884. The Court has made that determination.

Once it has been established that the obligations exist and are of the type described in § 523(a)(15), the obligations are nondischargeable unless one of the two affirmative defenses set forth in subsections (A) & (B) is plead and proven. If the affirmative defenses are raised, as they were in this case, the burden of proof shifts to the Debtor to establish the elements of one or both of such defenses. Id. *at* 885. Thus, Mr. Harden had the burden of "coming forward with the viability of either" defense. Id. The applicable standard of proof is a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The first affirmative defense is a denial by the Debtor of an "ability to pay" the obligations. Mr. Harden would meet his burden of proof on this defense if he could establish that paying the

obligations in question would reduce his available income below that necessary to support himself and his dependents. In re Dean, 277 B.R. 381 (Bankr. C.D. Ill 2002); In re Reed, 2002 WL 32001243 (Bankr. C.D. Ill. 2002). Mr. Harden's only known dependent is his son who resides with Mrs. Spaid and for whom Mr. Harden pays child support and other expenses.

Mr. Harden works full time as a sheriff's deputy for McLean County. He presented an affidavit of his monthly income and expenses, along with copies of pay stubs and prior years' tax returns. His affidavit shows monthly gross income of $3,232.44 with deductions by his employer of $2,393.10, leaving a net of $839.34. He further shows monthly living expenses of $1,988. This would result in a monthly deficit of $1,148.66. Testimony established, however, that Mr. Harden's affidavit contained serious inaccuracies.

Mr. Harden's affidavit stated that a $697.20 deduction is taken from his pay each month for a credit union payment. His living expenses include another $343 loan payment. This results in a total of $1040.20 in loan payments in his monthly budget. The testimony at trial established that Mr. Harden does have a monthly auto loan payment of approximately $340 but that there was no basis to claim the additional $697.20 deduction. Mr. Harden had a separate signature loan with his credit union at the time of his bankruptcy filing and, notwithstanding his discharge, continued to

make a monthly payment of approximately $90 on that loan until it was paid in June, 2006. Mr. Harden now has another signature loan through his credit union and that loan also requires a monthly payment of approximately $85. Mr. Harden overstated his loan payment obligations on his affidavit by approximately $600 per month.

Mr. Harden claimed a monthly rent payment of $750 per month. Mr. Harden resides with his girlfriend, who is a teacher. In loan applications to his credit union, Mr. Harden represented that he paid only one-half of the rent payment, or $375 per month. At trial, Mr. Harden testified that he makes the entire rent payment without contribution from his girlfriend. Either way, for purposes of the analysis here, Mr. Harden should be given credit for the expense of only one-half of the rent payment. Voluntary payments which he makes for the support of a girlfriend who is gainfully employed and not a legal dependent cannot be considered in determining whether Mr. Harden is able to make payments on his obligations and still support himself and his son. *See* In re Romer, 254 B.R. 207, 213 (Bankr. N.D. Ohio 2000).

Mr. Harden's affidavit bases his monthly income on two bi-weekly paychecks when, in fact, a more accurate calculation would be to use 4.3 weeks of pay to calculate a monthly figure. Mr. Harden testified that he occasionally works overtime but did not include any such overtime in his calculations. Both of these

factors would result in some increase in his available income.

Although not part of Mr. Harden's affidavit, the testimony at trial established that, during his marriage and for some period of time after his divorce, Mr. Harden worked part time at Fairchild's selling tires and other products. On a loan application to his credit union in May, 2004, he disclosed his part-time income as $250 per week. A loan application in March, 2005, disclosed the income at $150 per week. Mr. Harden was vague about when and why he terminated his part-time work. He was also vague about when and if he might resume such work.

Mrs. Spaid testified that she believed that Mr. Harden could resume his part-time job at any time.

Mrs. Spaid also brought to the Court's attention a provision of the Property Settlement Agreement which required Mr. Harden to use anticipated proceeds from a worker's compensation case to meet his obligation under the Agreement. Documents produced at trial showed that Mr. Harden received $4,410.89 in September, 2003, from the case, but did not use the funds to pay any of the expenses allocated to him in the Agreement. Mr. Harden did not challenge this evidence.

Based on the discrepancies in his affidavit, the voluntary loan payments made after discharge, the voluntary contributions to support a girlfriend, the failure to explain the quitting of the part-time job, and the diversion of significant funds from the

required payment of bills, this Court finds that Mr. Harden has not met his burden to prove that he cannot pay his obligations under the Property Settlement Agreement and still support himself and his son.

The second affirmative defense is an assertion by the Debtor that the benefit to him of discharging the obligations outweighs the detrimental consequences to Mrs. Spaid. A "totality of circumstances" test is generally used for balancing the benefit and detriment factors. Crosswhite, *supra*, 148 F.3d *at* 888; In re Kaczmarksi, 245 B.R. 555, 564 (Bankr. N.D. Ill. 2000).

Mr. Harden presented little evidence on this defense. He presented no special circumstances in his life or Mrs. Spaid's life which would cause the balance of benefit to detriment to tip in his favor. Mrs. Spaid presented an affidavit of her monthly income and expenses showing a regular monthly deficit. Mrs. Spaid has remarried and Mr. Harden urges that Mrs. Spaid's current living situation is such that she can readily afford to meet the obligations upon which he has defaulted. Mr. Harden did not, however, back up that assertion with any proof. Mr. Harden failed to meet his burden of proof on the second affirmative defense.

Based on all of the above, this Court finds that an Order should be entered which will include the following provisions:

> 1. Jason Harden's obligation to pay a share of his son's daycare expenses will be found to be non-dischargeable pursuant to § 523(a)(5).

2. Judgment will be entered in favor of Shannon Harden Spaid and against Jason Harden in the amount of $3,046.03, representing the amounts due related to the house sale and the remaining utility bills. Further, such judgment amount will be found nondischargeable pursuant to § 523(a)(15).

3. Jason Harden's obligation to pay U.S. Bank, Verizon, Cingular, Bergner's, Culligan, and Financial Recovery Services and hold Shannon Harden Spaid harmless therefrom will be found nondischargeable pursuant to § 523(a)(15). Because Mrs. Spaid has not been required to pay any of these bills, no money judgment will be entered in her favor.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###